Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4316 | DATE | 4/24/2001 |
| CASE TITLE | LYNDA MOORE vs. WILLIAM L. HENDERSON | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  The motion for summary judgment [15-1] is granted. Judgment is entered for defendant William L. Henderson, Postmaster General, and against plaintiff Lynda Moore. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 30 2001 | |
| | Notified counsel by telephone. | date docketed | 25 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 4/24/2001 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| SB courtroom deputy's initials | | jad mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LYNDA MOORE, )
)
Plaintiff, ) No. 00 C 4316
)
v. ) Suzanne B. Conlon, Judge
)
WILLIAM L. HENDERSON, Postmaster General, )
)
Defendant.

DOCKETED
APR 3 0 2001

## MEMORANDUM OPINION AND ORDER

Lynda Moore sues defendant her employer, the United States Postal Service, ("the postal service"), under Title VII, 42 U.S.C. § 2000e, et seq., for discrimination in the terms and conditions of her employment (Count I) and for retaliation (Count II). The postal service moves for summary judgment on all claims.

## BACKGROUND

All facts are undisputed unless otherwise noted. Moore, who is African-American, began working as a temporary postal service employee in May 1994. Like all temporary employees, Moore supplemented the regular work force. Temporary employees work at mail belts, sorting mail by zip code into designated containers. Generally, temporary employees work on the bulk mail belt, unless needed on the priority mail belt. Sorting bulk mail involves heavier items, such as catalogs. Temporary employees are required to work overtime each week.

Jose Diaz ("Diaz") supervises the bulk mail belt. Moore claims that Diaz discriminated against her by allowing a white temporary employee and three Filipino temporary employees, including Brigida Black ("Black"), to leave the bulk mail belt and work on the priority mail belt. A month after she

started, Moore believed she was subject to race discrimination when Black was taken off the bulk mail belt and allowed to work on the priority belt. Def. Rule 56.1 statement, Moore dep. at 33. Moore further contends Diaz treated her differently by excusing Black from working mandatory overtime. In late September 1994, a disagreement involving Black and Moore occurred while they worked on the same belt. Black remained on the belt, and Moore was moved to a different one. Pl. Ex. B at 47-48. Diaz did not personally investigate the disagreement. Id. at 20-24, 43-51; Pl. Ex. A at 21-23. Moore then told Diaz she planned to file an equal employment opportunity ("EEO") complaint against him for preferential treatment of Black. Once moved to the new belt, Moore continued to be loud and disruptive in the presence of other employees despite Diaz's request to lower her voice. Def. Ex. C; Pl. Ex. L, M. Diaz told Moore she was insubordinate, and Moore called him an "ignorant ass." Id.; Pl. Ex. M. Diaz terminated Moore that day, in part for the incident with Black, and for failure to follow instructions, conduct unbecoming a postal employee and insubordination because she refused to lower her voice, she disrupted the work unit, and directed a vulgar insult at him. Pl. Ex. D, Moore aff. at ¶¶ 35-39; Pl. Ex. L-M; Def. Ex. A-C. With the exception of Moore's confrontation with Black, acting manager Alice Williams ("Williams"), who is African-American, witnessed Moore's behavior and concurred in her termination. Def. Rule 56.1 statement, Moore dep. at 83-84; Def. Ex. B-C.

Prior to her termination, Moore did not tell anyone she believed she was subject to race discrimination. She first contacted an EEO counselor the day after her termination, September 28, 1994. Three months later, Moore signed for her right to sue letter from the postal service's EEO processing center ("EEO center"), which notified Moore of her duty to report immediately any address change to the EEO center. Def. Ex. D. On the same day, Moore filed her formal EEO complaint, identifying 4327 W. 18th Street as her mailing address. Moore then moved three times prior to August

2

1997. Moore moved a fourth time in September 1999 to her present address. Moore failed to report her new addresses to the EEO center. However, she filed a change of address form with the post office for each move. Def. Rule 56.1 statement, Moore dep. at 78.

In July 1996, Hakeem and Associates, a law firm representing Moore, contacted the EEO center and requested to be copied on all future correspondence. Pl. Ex. J. The law firm's letterhead address is 175 W. Jackson. In November 1996, an attorney representing Moore at Hakeem and Associates confirmed this address. Def. Ex. E, Bunkley-Claybrooks aff. at ¶ 3. In spring 1997, the law firm relocated to 53 W. Jackson and began to maintain post office box 19728, but failed to report the new address to the EEO center. Id. at ¶ 6; Def. Ex. F.

In April 1998, the EEO center issued its final agency decision by certified mail to Moore's counsel at 175 W. Jackson, and by first class mail to Moore at 4327 W. 18th Street. Def. Ex. E, Bunkley-Claybrooks aff. at ¶ 6. These notices were returned as undeliverable. Id. at ¶ 7. In fall 1998, Hakeem and Associates again relocated, this time to 417 S. Dearborn. By letter, Moore's counsel advised the EEO center that she did not receive a final agency decision and requested she be contacted regarding the status of Moore's complaint. This letter bears a return address of post office box number 19728. An EEO center specialist called the firm's telephone number, and left a message requesting a return call. Id. at ¶ 9. The EEO specialist's call was not returned. Id. In early October 1998, the EEO center sent another copy of the final agency decision by certified mail to the law firm at post office box 19728. Id. at ¶ 10. The correspondence was returned to the EEO center with a notice that it was unclaimed by the addressee. Id.

A year and a half later, in late March 2000, Moore's counsel telephoned the EEO center and requested another copy of the final agency decision be mailed to 417 S. Dearborn, because neither she

3

nor Moore received a copy. In early May 2000, an EEO specialist sent copies of the April 1998 decision to Hakeem and Associates at 417 S. Dearborn and to Moore. Moore filed this action on July 17, 2000.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); King v. National Human Res. Comm., Inc., 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. Bay v. Cassens Transp. Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000).

### II.  Title VII's Limitations Period

A Title VII suit against the federal government must generally be filed within 90 days of the plaintiff's actual receipt of a final agency decision. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; Elmore v. Henderson, 227 F.3d 1009, 1010-11 (7th Cir. 2000). Although not a jurisdictional prerequisite, timely filing of a Title VII suit is a precondition, akin to a statute of limitations, that is subject to equitable tolling where appropriate. Irwin v. Department of Veteran's Affairs, 498 U.S. 89,

4

95-96 (1990); Gibson v. West, 201 F.3d 990, 993 (7th Cir. 2000). To determine the 90-day period for filing a Title VII suit, the Seventh Circuit follows a three-pronged approach. *See* Bond v. American Med. Ass'n, 764 F. Supp. 122, 124 (N.D. Ill. 1991); Trinkle v. Bell Litho, Inc., 627 F. Supp. 764, 765 (N.D. Ill. 1986). First, the period usually begins to run when the plaintiff actually receives notice of the final agency decision. *See* Jones v. Madison Serv. Corp., 744 F.2d 1309, 1312 (7th Cir. 1984); Bond, 764 F. Supp. at 124. If the plaintiff is represented by an attorney, and the EEO agency is informed of this fact, receipt by the attorney begins the running of the 90-day period. *See* Jones, 744 F.2d at 1312, 1314.

Second, where the person initially receiving the notice is someone other than the plaintiff or the plaintiff's attorney, the period does not begin to run until the plaintiff or his attorney actually receives the notice. *See* Archie v. Chicago Truck Drivers, Helpers & Warehouse Workers Union, 585 F.2d 210 (7th Cir.1978); Trinkle, 627 F. Supp. at 765.

Third, where the plaintiff's receipt of the notice is delayed, a fault approach is used. *See* St. Louis v. Alverno Coll., 744 F.2d 1314, 1317 (7th Cir. 1984); Trinkle, 627 F. Supp. at 765. Under this approach, delay caused by the fault of the plaintiff does not toll the 90-day period. Elmore, 227 F.3d at 1013; St. Louis, 744 F.2d at 1317. It is a plaintiff's responsibility to advise the EEO agency of a change in address. *See* 29 C.F.R. § 1601.7(b); St. Louis, 744 F.2d at 1316-17; Barnes v. Ameritech, No. 99 C 2321, 2000 WL 204233, at *1 (N.D. Ill. Feb. 15, 2000). Failure to keep the EEO agency apprized of an address change constitutes fault. St. Louis, 744 F.2d at 1317. In this instance, the 90-day period began to run when the notice first arrived at the old address. Id. Failure to pick-up a notice sent by certified mail also triggers the limitations period. Houston v. Sidley & Austin, 185 F.3d 837, 839 (7th Cir. 1999); *see* Bond, 764 F. Supp. at 125. Whether a plaintiff is at fault is considered

on a case-by-case basis. Trinkle, 627 F. Supp. at 765. The plaintiff must take reasonable steps to ensure delivery of the notice. St. Louis, 744 F.2d at 1317. Where an attorney is to receive the notice on a plaintiff's behalf, she must take reasonable steps to ensure its delivery. Davis-Gilbert v. Alberto Culver Co., No. 88 C 4014, 1988 WL 121504, at *1 (N.D. Ill. Nov. 4, 1988).

The record clearly establishes Moore's repeated failure to report her address changes to the EEO center. She therefor bears fault for nor receiving notice of the EEO's decision until two years after the final decision was issued. Similarly, her counsel did not keep the EEO center informed of address changes or take reasonable steps to insure timely deliver of notices. Fault also rests with Moore's counsel for the two year delay. Thus, Moore's lawsuit is untimely.

### III. Exhaustion of Administrative Remedies

In addition, Moore did not exhaust her administrative remedies in a timely manner. Federal employees must notify an EEO counselor of discriminatory conduct within 45 days of its occurrence in order to assert a Title VII claim. 29 C.F.R. § 1614.105(a)(1); Johnson v. Runyon, 47 F.3d 911 (7th Cir. 1995). This 45-day period is extended when a plaintiff shows that she was not notified of the time limit. Id. at (a)(2); Id. at 917-18. Moore fails to offer evidence that she was not notified of the time limit. She acknowledges that she first believed she was the subject of discrimination in June 1994, when the post office assigned Black to the priority mail belt. Def. Rule 56.1 statement, Moore dep. at 33-34. Despite this, Moore did not complain about race discrimination until September 27, 1994, and first contacted an EEO counselor the next day. Moore now attests she did not believe she suffered discrimination until September 27, 1994, when she was removed from the belt where Black was working. Pl. Ex. D, Moore aff. at ¶ 42. It is well-settled that parties cannot avoid summary judgment by creating "sham" issues of fact with affidavits that contradict their prior depositions. Bank of Ill.

6

v. Allied Signal Safety Restraint Sys., 75 F.3d 1162, 1168 (7th Cir.1996); *see* Diliberti v. United States, 817 F.2d 1259, 1263 (7th Cir.1987).

Finally, Moore argues that the disparate belt assignments and application of the mandatory overtime policy constitute continuing violations, extending the 45-day filing period to September 27, 1994. The continuing violation theory is inapplicable if Moore knew or should have known with the exercise of reasonable diligence of the allegedly discriminatory actions. Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir. 1994); Moskowitz v. Trustees of Purdue Univ., 5 F.3d 279, 281-82 (7th Cir. 1993). Moore believed in June 1994 that she was discriminated against in belt assignments; thus, the continuing violation theory does not apply to belt assignments. Id. at 1058; Id. at 282. With regard to mandatory overtime, Moore knew working overtime was mandatory since her first day on the job. Def. Rule 56.1 statement, Moore dep. at 11, 36-37. Against her wishes, Moore had to work overtime almost every day, yet she noticed non-African-Americans were not required to do so. Id. at 37-39. Moore should have known she might be subject to discrimination in the application of the mandatory overtime policy. *See* Jackson v. Rockford Hous. Auth., 213 F.3d 389, 396 (7th Cir. 2000) (reasonable person should be aware of possible discrimination where evidence suggests different treatment of unprotected persons). Moore's continuing violation theory fails, and her claims are time-barred.

### IV. Title VII Discrimination and Retaliation Claims

Even if Moore's claims were not untimely, Henderson is still entitled to summary judgment because Moore cannot establish a *prima facie* case of discrimination in the terms and conditions of her employment or that the reason for her termination was pretextual.

7

A.  **Disparate treatment under Title VII**

To establish her claim for discrimination under Title VII, Moore must offer either direct evidence of discriminatory intent or show disparate treatment through the indirect, burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). *See* Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). Moore offers no direct proof of discrimination, but attempts to meet her burden by showing discriminatory treatment under the McDonnell Douglas test.

To prove disparate treatment using the indirect method, Moore must show that she belongs to a protected class; she performed her job satisfactorily; she suffered an adverse employment action; and the postal service treated similarly-situated employees outside of her class more favorably. *See* Plair, 105 F.3d at 347; Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir. 1994). Once Moore makes this showing, the postal service must articulate a legitimate, non-discriminatory reason for the adverse action. *See* McDonnell Douglas, 411 U.S. at 802; Lenoir, 13 F.3d at 1133. Moore must then prove by a preponderance of the evidence that the postal service's reason is a pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Plair, 105 F.3d at 348. To do this, Moore must show that a reasonable fact finder could infer the postal service did not honestly believe the reasons for its action. *See* Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994).

The postal service does not contest that Moore belongs to a protected class or that she performed her job satisfactorily. Rather, the postal service argues that Moore cannot establish she suffered an adverse employment action. The Seventh Circuit broadly defines adverse employment action. Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Not every action that makes an employee unhappy is actionable. Cullom v. Brown, 209 F.3d 1035, 1041 (7th Cir. 2000); Williams v.

8

Bristol-Meyers Squibb, 85 F.3d 270, 274 (7th Cir. 1996). An adverse action must consist of more than "a mere inconvenience or an alteration of job responsibilities." Ribando v. United Airlines, Inc., 200 F.3d 507, 510-511 (7th Cir. 1999) (citing Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)). Examples of materially adverse job actions include termination, a demotion evidenced by a decrease in pay, a less distinguished title, a material loss of benefits or significantly diminished material responsibilities. Id.

Moore argues she suffered disparate treatment by being forced to work at the bulk mail belt and mandatory overtime, while non-African-Americans were not. There is no evidence that assignment to the bulk mail belt resulted in an adverse action. Moore did not lose her job; her salary did not decrease; her title did not change; her benefits were not affected; and her job responsibilities did not diminish. Nor is there evidence that working on the priority mail belt is promotional; includes a salary increase; a change in title; an increase in benefits; or increased job responsibilities. It is undisputed that temporary employees supplement the regular work force as needed, where needed, and receive the same pay regardless of their performance and where they are assigned to work. Assignment at all belts involves sorting mail into designated containers. The only possible adverse effect of working at the bulk mail belt is that sorting there generally involves heavier items. Moore does not offer any evidence that working at the bulk mail belt is more than an inconvenience to her. This is not enough to constitute an adverse action.

The postal service contends that Moore's overtime claims do not rise to the level of a cognizable employment action. Denial of overtime has a tangible economic effect, and thus normally constitutes an adverse action. *See* Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 762 (1998); Coleman, v. Pepsi-Cola Gen. Bottlers, Inc., No. 97 C 4898, 1998 WL 901675 (N.D. Ill. Dec. 21,

1998). But Moore does not complain that the postal service denied her overtime opportunities; she complains the postal service provided her with too many. Moore worked the same amount of overtime as every temporary employee not excused from the requirement. Working overtime did not cause Moore to lose her job; was not a demotion; did not negatively impact her pay; did not alter her benefits; and did not change her title. The postal service compensated Moore for overtime at time and a half her normal rate of pay, the same as all temporary employees. Moore offers no explanation how working overtime constitutes an adverse action. Dillard v. Ron Weber & Assoc. of Ill., Inc., No. 96 C 50375, 1999 WL 33214, at *3 (N.D. Ill. Jan. 22, 1999); Brown v. Wicklander Printing Corp., No. 95 C 6557, 1998 WL 704356, at *4 (N.D. Ill. Sept. 25, 1998). Although Moore's job responsibilities did not change, Moore worked about ten hours more a week than excused temporary employees. Def. Rule 56.1 statement, Moore dep. at 11, 37, 39. Despite her aversion to working overtime, Moore never asked to be excused from it.[1] Id. at 39. Moore did not complain about working overtime until after the postal service terminated her. This is insufficient to show discrimination. *See* Pressley v. Haeger, 977 F.2d 295, 297 (7th Cir. 1992) (race discrimination is an intentional wrong; absent knowledge, there is no intent); *see also* Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999) (plaintiff must show discriminatory intent for adverse action). Further, Moore offers no evidence that Diaz made the decisions regarding who could opt out of mandatory overtime, and he is the only person Moore claims discriminated against her. Moore does not know if Black requested to be excused from overtime and offers no evidence that other non-African-Americans were excused without a request. Def. Rule 56.1 statement, Moore dep. at 39. In fact, Black requested and was excused by a supervisor

---

[1] Moore now claims she requested an exemption from mandatory overtime because she attended school and had child care issues. Def. Rule 56.1 statement, Moore dep. at 37; Pl. Ex. D. Neither Moore's deposition testimony nor her affidavit supports this contention.

above Diaz from mandatory overtime on one occasion to take care of her sick daughter. Pl. Ex. B at 62-64, 67. The white temporary employee was excused from the requirement on request because he depended on the train for transportation, and the train schedule did not permit him to stay. Def. Rule 56.1 statement, Moore dep. at 39.

Because Moore cannot establish the postal service subjected her to an adverse employment action, she cannot to establish a *prima facie* case of disparate treatment.

### B.     Retaliation under Title VII

To establish a *prima facie* case of retaliation, Moore must show she engaged in statutorily protected expression by complaining of race discrimination; she suffered an adverse job action; and there is a causal link between her complaint and the adverse action. Johnson v. University of Wis., 70 F.3d 469, 479 (7th Cir. 1995). Once Moore establishes a prima facie case, the postal service must articulate a legitimate, nondiscriminatory reason for its actions. *See* Sanchez v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999); King v. Preferred Tech. Group, 166 F.3d 887, 892-93 (7th Cir. 1999). Moore must then establish the postal service's reason is pretextual. *See* Walker v. Glickman, 241 F.3d 884 (7th Cir. 2001); Sanchez, 188 F.3d at 746. To survive the postal service's motion for summary judgment, Moore must show that a reasonable fact finder could infer that the postal service did not honestly believe the reason for its action. *See* Anderson, 13 F.3d at 1124.

Suffering an adverse employment action soon after engaging in protected expression is enough to establish a *prima facie* case for retaliation. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1458 (7th Cir.1994). Moore has established a *prima facie* case. She informed Diaz she intended to file an EEO complaint against him

on September 27, 1994, for preferential treatment of Black; later the same day, Diaz terminated her. Pl. Ex. D at ¶¶ 35, 39.

The postal service's reasons for terminating Moore include failure to follow instructions, conduct unbecoming a postal employee and insubordination. Def. Ex. A-C. Williams witnessed Moore's behavior and concurred in her termination. Def. Rule 56.1 statement, Moore dep. at 83-84; Def. Ex. B-C. Moore argues these reasons are pretextual because Diaz offered conflicting explanations for terminating her in a discharge letter and at his deposition. Moore contends Diaz focused on the incident involving Black and Moore in the discharge letter, but testified at his deposition that he terminated Moore for insubordination and refusal to perform assigned work. Diaz's reasons for discharging Moore are not inconsistent. In both his deposition and discharge letter, Diaz stated he terminated Moore for insubordination, refusal to perform assigned work and failure to follow instructions. Pl. Ex. A at 26; Def. Ex. B.

Moore also asserts that Diaz stressed the incident with Black in the discharge letter, yet testified at his deposition that this incident did not factor into his decision to terminate Moore. Id. at 30; Pl. Ex. M. Whether or not Diaz considered Moore's confrontation with Black in his decision to terminate her is immaterial. Moore offers no evidence that consideration of the confrontation was racially motivated or that the confrontation did not take place. Rather, Moore claims Black yelled at her, and Diaz accused Moore of being the instigator without investigating the incident. Pl. Facts at ¶¶ 10-11. A different supervisor investigated the incident, and discussed her investigation with Williams. Pl. Ex. B at 43-53; Def. Ex. C; Def. Ex. M. Diaz learned of the incident second-hand, but Moore fails to present evidence Diaz did not honestly believe Moore caused the confrontation with Black. That is sufficient grounds for termination.

12

Further, Moore presents no evidence that her continued yelling did not disrupt other employees and does not deny that she called Diaz an "ignorant ass." Finally, Moore proffers no evidence that Williams' reasons for concurring in Moore's termination are pretextual. As a result, Moore fails to show the postal service did not honestly believe its reasons for terminating her.

## CONCLUSION

The motion for summary judgment is granted.

ENTER:

Suzanne B. Conlon
United States District Judge

April 24, 2001